IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LUCY KASSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 03-778-GPM |
| | ) | |
| UNION PLANTERS CORPORATION | ) | |
| | ) | |
| D/B/A | ) | |
| | ) | |
| UNION PLANTERS INVESTMENT ADVISORS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Before the Court is plaintiff's motion to compel defendant to fully respond to her interrogatory No. 5 and request for production No. 5, which seek to identify each individual involved in the decision to reduce the number of portfolio managers in February 2003, and to produce all related documentation. **(Doc. 23).** Defendant claims e-mail correspondence between plaintiff's supervisor Paul Anderson, human resources generalist Doug Edwards, legal assistant Margaret Lievertz and attorney Lynn Diebold is protected by attorney-client privilege and the work product doctrine. **(*See* Doc. 24, Exhibit 2; and Doc. 35).** Plaintiff asserts that the requested information and documentation is not protected. **(Doc. 24).** Plaintiff also contends defendant has waived any privilege or protection because one of the e-mails at issue was attached to defendant's position statement submitted to the EEOC, and by describing the substance of the communications in its response to the subject motion to compel. **(Doc. 41).**

1

According to defendant, the disclosure of one of the disputed e-mails was inadvertent and should not constitute a waiver of any privilege or protection for that single document, let alone all documents of the same subject matter.  **(Doc. 42).**

### Relevant Legal Principles

It is important to keep in mind how wide open discovery is under the Federal Rules of Civil Procedure.  Federal Rule of Civil Procedure 26(b)(1) permits the discovery of any matter relevant to the subject matter of the pending action, so long as the sought after information is not privileged, even if inadmissible at trial, if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.  The Supreme Court has interpreted relevance broadly to include any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.  ***Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).**   Discovery may be had from any person, provided that the person from whom discovery is sought is not subjected to annoyance, embarrassment, oppression, or undue burden or expense.  ***See*  Fed.R.Civ.P. 26(c), 30(b), 34, and 45.**

Insofar as defendant claims protection from disclosure of certain information and documents, Federal Rule of Civil Procedure 26(b)(5) dictates that a party shall make any claim of privilege "expressly and shall describe the nature of the documents . . . in a manner that, without revealing itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection."

> The purpose of the [attorney-client] privilege is to encourage full disclosure and to facilitate open communication between attorneys and their clients.  However, because "the privilege has the effect of withholding relevant information," courts construe the privilege to apply only where necessary to achieve its purpose.  The mere assertion of a privilege is not enough; instead, a party that seeks to invoke the attorney-client privilege has the burden of establishing all of its essential elements.

*U.S. v. BDO Seidman*, 337 F.3d 802, 810-811 (7th Cir. 2003) (internal citations omitted).  Among the essential elements of the attorney-client privilege are the requirements that the communication be made to the attorney in confidence, and that the confidences constitute information that is not intended to be disclosed by the attorney." *Id.* at 811 (internal citations omitted).  "'[T]he privilege protects only the client's confidences, not things which, at the time, are not intended to be held in the breast of the lawyer. . . .'" *U.S. v. Weger*, 709 F.2d 1151, 1154 (7th Cir. 1983) (quoting *Clanton v. U.S.*, 488 F.2d 1069, 1071 (5th Cir. 1974)).  "Selective" waiver of the privilege is generally not recognized, but courts are less likely to find waiver if disclosure was inadvertent. *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1126-1127 (7th Cir. 1997).

  The work product doctrine serves as a qualified immunity from discovery, not as a privilege.  When this qualified immunity is overcome by a proper showing of substantial need, a court must still protect against disclosure of mental impressions, opinions, conclusions, or legal theories of the attorney or representative in regards to the litigation. **Fed. R. Civ. P. 26(b)(3).**  The work product doctrine protects the following from disclosure: interviews, statements, memoranda, correspondence, briefs, mental impressions, and personal thoughts of attorneys. *See Hickman v. Taylor*, 329 U.S. 495 (1947).  The doctrine is intended to provide a safe haven within which the attorney can analyze and prepare his or her client's case in anticipation of litigation. *See U.S. v. Nobles*, 422 U.S. 225 (1975).  The work product doctrine is not limited to the information gathered by the attorney; the doctrine also protects materials gathered by investigators and other agents of the attorney as part of the attorney's preparation for trial. *See Nobles*

3

**at 225.** For example, the work of a client's attorney, consultant, surety, indemnitor, insurer, or agent is protected by the work product doctrine. **Fed. R. Civ. P. 26(b)(3).** The qualified immunity afforded by the work product doctrine may be waived. ***See Noble* at 225.** What constitutes a waiver depends on the circumstances. ***Id.*** An unintentional or inadvertent disclosure of materials does not generally indicate a waiver of the work product protection. ***See, e.g., Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215 (4th Cir. 1976).**

<u>**Analysis**</u>

By separate order the Court concluded that defendant has <u>not</u> waived any privilege or protection by describing the e-mails at issue in its response to the subject motion. Defendant has merely complied with Federal Rule of Civil Procedure 26(b)(5).

The documents at issue have been reviewed in camera. **(Doc. 53).** The following documents are at issue:

- A. A January 22, 2003, e-mail from Paul Anderson to Doug Edwards;

- B. A string of e-mails dated February 19-20, 2003, between Doug Edwards, Margaret Lievertz and Paul Anderson;

- C. A string of e-mails dated February 19-20, 2003, between Doug Edwards, and Paul Anderson stemming from an initial e-mail from Margaret Lievertz to Doug Edwards;

- D. A string of e-mails dated February 26, 2003, between Lynn Diebold, Doug Edwards, Margaret Lievertz and Paul Anderson;

- E. An e-mail reply dated June 19, 2003, from Paul Anderson answering questions relative to the termination/RIF; recipient unknown; and

- F. A memo dated July 17, 2003, from Paul Anderson; recipient unidentified.

Defendant asserts that all of the documents were created at the direction of attorney Diebold, in anticipation of litigation. Defendant explains that e-mail strings or portions thereof not involving Diebold or her assistant Lievertz are merely members of the decision-making group gathering the information requested by Diebold. Of course, the mere assertion that a document or information was created in anticipation of litigation, or that it contains attorney work product does not make it so.

A review attorney Diebold's declaration and the deposition testimony of Edwards reveal conflicting statements, which call into question the assertion that all of the contested documents were created in anticipation of litigation. Diebold explains, "As Labor and Employment Counsel, I ensured that terminations within UP were based upon lawful reasons." **(Doc. 35, Exhibit 1, ¶ 3).** Diebold simultaneously asserts, "These requests for additional information were not routine or standard." **(Doc. 35, Exhibit 1, ¶ 5).** Yet, Edwards' deposition testimony indicated some e-mails were a discussion about the employment decision, and some were at the request of counsel. **(Doc. 35, Exhibit 2, pp. 76, 79-80 and 89).** Most telling appears to be Edwards' explanation that the legal department was in the process of creating severance documentation, because legal approves all severance packages; and although legal does not approve terminations not involving a severance package, legal is who one would normally consult. **(Doc. 35, Exhibit 2, pp. 89-90).** The notion that the January and February 2003 e-mails were routine– as opposed to work done in anticipation of litigation, or attorney work product– is reinforced by reference within the string of e-mails dated February 19-20, 2003, between Doug Edwards, Margaret Lievertz and Paul Anderson, wherein Lievertz explains that she is trying to fill in the "Reason for Termination" section of the

5

"Severance Agreement Request Form;" and discussion of adjusting plaintiff's last day of work. **(Doc. 53, Exhibit B).** Similarly, the string of e-mails dated February 19-20, 2003, between Doug Edwards, and Paul Anderson stemming from an initial e-mail from Margaret Lievertz to Doug Edwards, and the string of e-mails dated February 26, 2003, between Lynn Diebold, Doug Edwards, Margaret Lievertz and Paul Anderson all appear to be aimed at filling in that form. **(Doc. 53, Exhibits C and D)**.

There is no indication that these e-mails (Exhibits A-D) are attorney work product or reveal mental impressions, opinions, conclusions, or legal theories of the attorney. Furthermore, as explained above, the e-mails (Exhibits A-D) are not protected by the attorney-client privilege, in that they appear to be related to routine paperwork associated with getting approval of a severance package, and in no way involve the client's confidences.

In contrast, the content of the e-mail reply dated June 19, 2003, from Paul Anderson answering questions relative to the termination/RIF **(Doc. 53, Exhibit E)**, and the memo dated July 17, 2003, from Paul Anderson **(Doc. 53, Exhibit F)**, makes clear that both documents are protected by the attorney-client privilege and work product doctrine. That conclusion is reinforced by the fact that those documents were created after the termination. Although the recipients of those two documents are not identified, the Court has no reason to question attorney Diebold's declaration that those documents were created at her request. **(Doc. 35, Exhibit 1, ¶ 9).**

Plaintiff's argument that any protection has been waived by defendant's transmittal of one of the e-mails to the EEOC is not well taken. The nature of the two protected documents is different from that of the e-mails. Whether the protected

6

documents and the unprotected e-mails contain some similar information is irrelevant from the Court's perspective. The concerns underlying the attorney-client privilege and work product doctrine would be violated due to the purpose and nature of the contents of the documents. The Court finds no other basis for waiving the protection.

**IT IS THEREFORE ORDERED** that, for the aforestated reasons, plaintiff's motion to compel defendant to fully respond to her interrogatory No. 5 and request for production No. 5 **(Doc. 23)** is **GRANTED IN PART AND DENIED IN PART**. On or before **September 30, 2005**, defendant shall produce the following documents to plaintiff:

    A.    A January 22, 2003, e-mail from Paul Anderson to Doug Edwards;

    B.    A string of e-mails dated February 19-20, 2003, between Doug Edwards, Margaret Lievertz and Paul Anderson;

    C.    A string of e-mails dated February 19-20, 2003, between Doug Edwards, and Paul Anderson stemming from an initial e-mail from Margaret Lievertz to Doug Edwards; and

    D.    A string of e-mails dated February 26, 2003, between Lynn Diebold, Doug Edwards, Margaret Lievertz and Paul Anderson.

**IT IS FURTHER ORDERED** that, for the aforestated reasons, defendant need <u>not</u> produce the following documents, as they are protected by the attorney-client privilege and work product doctrine:

    E.    An e-mail reply dated June 19, 2003, from Paul Anderson answering questions relative to the termination/RIF; recipient unknown; and

    F.    A memo dated July 17, 2003, from Paul Anderson; recipient unidentified.

**IT IS SO ORDERED.**

DATED: September 21, 2005          s/ Clifford J. Proud
                                                                                                                           CLIFFORD J. PROUD
                                                                                                                           U. S. MAGISTRATE JUDGE